CHARLES HENDREN, as President of the COMPRESSED AIR, FREE AIR, TUNNEL, CAISSON, SUBWAY, COFFERDAM, SEWER CONSTRUCTION WORKERS' UNION, LOCAL No. 102, and Another, Plaintiffs, v. THOMAS CURTIS, as President of the ROCK DRILLERS' UNION, LOCAL No. 250, JOHN MILLER, as President of the BLASTERS' AND APPRENTICES' BLASTERS' PROTECTIVE ASSOCIATION, LOCAL No. 266, and Others, Defendants.

Supreme Court, New York County, July 1, 1937.

*Pinto & Marcantonio,* for the plaintiffs.

*Albert E. Schwartz,* for the defendants Thomas Curtis and Anthony Salimbene.

*Robert J. Fitzsimmons*, for the defendant John Miller.

*Nevius, Brett & Kellogg*, for the defendants Arthur A. Johnson Corporation and the Necaro Co., Inc.

*Frank J. Macre*, for the defendant George H. Flynn Corporation.

*Bandler, Haas & Collins*, for the defendant The Carleton Company, Inc.

HARRIS, J.  Briefly stated, the relief prayed for in this action is as follows: (1) That the corporate defendants herein, and each of them, be restrained from refusing to employ members of the plaintiffs as rock drillers, blasters and laborers on the shafts and tunnel work of a subway job on Sixth avenue; (2) that the defendant unions be restrained from interfering with the employment of the members of the plaintiffs in such occupations; (3) that the defendants be restrained from enforcing a certain agreement dated February 25, 1937, and from breaching a certain agreement dated February 14, 1936.

The proof before the court and the contentions of the parties herein may be stated more or less succinctly as follows: The plaintiff unions and the defendant unions are all locals of the same international, International Hod Carriers', Building and Common Laborers' Union of America.  Each of the corporate defendants has a separate contract upon a separate portion of the subway being built through Sixth avenue in the borough of Manhattan.  Preliminary to starting this construction, and on or about the 14th day of February, 1936, the corporate defendants herein as parties of the first part, and the local union parties herein as parties of the second part, entered into an agreement from which parts pertinent to this action are quoted as follows:

## " PREAMBLE

" This Agreement is entered into to prevent strikes and lock-outs and to facilitate peaceful adjustment of grievances and disputes between employer and employee, and to prevent waste and unnecessary and avoidable delays and expense, and for the further purpose of at all times securing for the employer sufficient skilled workmen and, so far as possible, to provide for Labor continuous employment, such employment to be in accordance with the conditions herein set forth, and at the wages herein agreed upon, that stable conditions may prevail, that costs may be as low as possible consistent with fair wages and conditions, and to further establish the necessary procedure by which these things may be accomplished.

## " DECLARATION OF PRINCIPLES

" Both parties to this Agreement believe that a Uniform Agreement, if adopted by all Employers and all Unions, would further the interests of ' Engineering Construction Industry,' and agree to use their best efforts to bring about such an Agreement, and further believe that such a Uniform Agreement should contain the following Principles:

" 1. That there shall be no limitation as to the amount of work a man shall perform during his working day, it being understood that the workman shall perform a fair and honest day's work.

" 2. That there shall be no restriction of the use of machinery, tools or appliances.

" 3. That there shall be no restriction of the use of any raw or manufactured materials, except prison made.

" 4. That no person shall have the right to interfere with workmen during working hours.

" 5. That workmen shall be at liberty to work for whomsoever they see fit, but that they shall demand and receive the wage agreed upon as hereinafter set forth in this Agreement.

" 6. That the employers are at liberty to employ and discharge whomsoever they see fit, and that the parties of the first part shall at all times be the sole judges as to the work to be performed and whether such work performed by any members of the aforesaid parties of the second part employed by them is, or is not satisfactory.

" 7. That the foreman or foremen shall be the agent or agents of the employer, selected by the employer, and where hereinafter scheduled in this Agreement, shall be a member or members of any of the above mentioned Locals, and shall be paid a rate of wage to be determined by the employer, but the said rate of wage, shall not be less than One Dollar ($1.00) more per day than the regular rate paid to the men supervised by the said foreman or foremen.

## " ARTICLES OF AGREEMENT
### " ARTICLE II.

" The parties of the first part agree that on Heavy Construction and Railroad Contracting Work as hereinafter defined, within the area of the five Boroughs of the City of New York, New York, except on existing contracts or contracts on which proposals have been submitted, they will employ, during the life of this Agreement only such workmen as are members in good standing of the International Union, who are members of the Local Unions comprising the parties of the second part, under the terms, conditions and

rates of wages hereinafter provided in this Agreement, which terms conditions and rates of wages have been arrived at and determined through bona fide collective bargaining, between all the parties to this Agreement.

## " ARTICLE IV.

" That from February 14, 1936, The Arthur A. Johnson Corporation and Necaro Co., Inc., agree that they will employ, subject to the provisions and conditions hereinafter set forth, between hours fixed by the parties of the first part, but not more than a total of eight (8) consecutive hours in each twenty-four (24) hour period, only such Compressed Air Workers, Blasters, Rock Drillers, Semi-Skilled and Unskilled Laborers as hereinafter classified, who are members of the said International Union and belonging to Locals now known as Numbers 45, 102, 250, 266 and 731, or by whatever name or number shall be hereafter assigned or designated to them by the said International Hod Carriers, Building and Common Laborers Union of America of the American Federation of Labor; and it is further provided that in the event three (3) shifts are worked within any twenty-four (24) hour period the men shall have not less than one-half ($\frac{1}{2}$) hour for lunch as part of the eight (8) hour shift on which they are working, and shall be paid for the full eight (8) hours.

" Section 2. In consideration of the covenants herein contained, the parties of the second part agree to provide sufficient, able and efficient workmen to properly conduct the above work.  *  *  *

## " ARTICLE V.
## " ARBITRATION

" Section 1. For the purpose of settling disputes between the parties hereto as to any claim of violation of this Agreement or of any dispute that may arise in connection therewith or for construing the terms and provisions hereof, there shall be appointed an Arbitration Board.  *  *  *

## " ARTICLE VI.
## " STOPPAGE OF WORK

" Section 1. It is hereby agreed and understood that until final decision has been rendered by the Arbitration Board, as provided in Article V, there shall be no lock-outs of any sort by the parties of the first part, nor shall there be any strikes or stoppage of work of any sort by the parties of the second part, but that all grievances or complaints of any sort that may arise from either party, are to be submitted to the Arbitration Board for final decision and settlement. which shall be binding on all the parties hereto.

## " ARTICLE VIII.

" It is hereby understood and agreed that any member of the said International Union, belonging to the Local Unions constituting the parties of the second part, shall be permitted to perform any or all work as classified and covered by this Agreement, without discrimination and without regard to his particular membership in any one of the said Locals, and the parties of the first part shall be at liberty to employ any member of the said International Union who is a member of any of the Locals constituting the party of the second part hereto, to perform any classification of work covered by this Agreement, providing the workman, when so employed, shall be paid at the rate of wages and under conditions of employment for the classification of work he is performing as provided in this Agreement."

Subsequent to the execution of the above mentioned contract between the corporate defendants and the local unions, and before the corporate defendants had begun or progressed with their individual portions of the subway, plaintiff unions were engaged in work on certain contracts for a contractor named Rosoff. On these Rosoff jobs disputes arose as to whether or not the members of the International Hod Carriers', Building and Common Laborers' Union of America were entitled to work upon such Rosoff jobs, and as to whether or not the working conditions on such jobs were fair to the workmen, and such disputes lead to a strike on the part of the plaintiffs. Such strike made the city authorities fearful that there would be delay in the carrying out of the contracts of the corporate defendants herein, and, at the request of the mayor of the city of New York and of the board of transportation of such city, there were held certain conferences in which the representative of the board of transportation and the International president of the International Hod Carriers', Building and Common Laborers' Union of America took part, which conference lead to a meeting of the officers of the board of transportation on the 25th day of February, 1937, at which there were the following named persons or representatives, and as a result of which meeting there came the drafting and signature of the memorandum agreement which is recited herein as follows:

" February 25, 1937.

### " MEMORANDUM

" Memorandum of Agreement made this 25th day of February, 1937, at a conference held at the Board of Transportation between

the Building Trades Council, represented through Thomas Murray, its President, and a Committee accompanying him as follows:

" United Brotherhood of Carpenters:
   " Chas. W. Hanson, Pres. District Council of Carpenters
   " Chas. Johnson, Local 1456
   " David J. Bennett, Local 1536
" International Union of Operating Engineers:
   " Jos. S. Fay, Eastern Representative
   " Jos. Delancy, Local 130–130-A
   " H. Stadt, Local 130–130A
   " John O'Keefe, Local 130–130A
   " Jerry Laverty, Local 125
   " Bart Leach, Local 184
   " Fergus Morrissey, Local 184
   " R. Ruddell, Local 184
   " W. Schubert, Local 184
" International Hod Carriers' Building and Laborers Union of America:
   " Herbert Rivers, Vice President
   " Joseph Marshall, Vice-President
   " Vincent F. Morreale, Counsel
" Thos. J. Curtis, Rockdrillers Local 250
" John Miller, Blasters Local 266
" Jos. Devine, Blasters Local 266
" A. Salimhene, Excavators Local 731
" J. McHugh, Excavators Local 731
" B. Feeney, Local 45
" Owen Kelly, Rockdrillers Local 250
" E. E. William, Rockdrillers Local 250
" John O'Rouke, Teamsters & Chauffeurs Local 282
" Frank Monahan, Blacksmiths Local 28
" and for the contracts on Sixth Avenue work:
" Mr. Carleton of the Carleton Company
" Mr. Carey of the Arthur A. Johnson Co. and Necaro Co., Inc.
" Mr. S. M. Rutledge, President of the George H. Flinn Co.

" At such conference it developed that the International Union of Hod Carriers and Common Laborers Union (hereinafter referred to as the International Union) alleged that they had jurisdiction over certain shoring and underpinning work of buildings and over the timbermen that would be employed in the construction of the Sixth Avenue section of the Independent City-owned Rapid Transit Railroad. At the conference a representative of the Brotherhood of Carpenters claimed that work of the timbermen

together with the shoring of the buildings along the line was the work of the timbermen and underpinners affiliated with the Brotherhood of Carpenters.

" It further appeared at the conference that a contract is in existence in the City of New York between certain contractors and more particularly with the Carleton Company, the Necaro Company, and the Arthur A. Johnson Company and with the George H. Flinn Corp. and certain Local Unions affiliated with the International Union, in which contract it was pointed out, a clause, as follows:

" ' 7. It is agreed and understood that in the event of any jurisdictional dispute that may arise by and between the party of the second part and any international Union affiliated with the American Federation of Labor the employer may select the men he chooses to perform the work in dispute pending a determination of the dispute by the National Labor Relations Board or other acceptable tribunal.'

" It was further stated by the representatives of the International Union that they considered a jurisdictional dispute had arisen within the purview of the above referred to contract and that under such circumstances the contractors were entitled to employ those whom they choose to do the work of shoring, underpinning and timber work until an adjudication of the alleged jurisdictional dispute would be determined by the proper authorities within the Building Trades department of the American Federation of Labor.

" In the underpinning of buildings it is agreed that in the digging of the necessary holes or trenches below the foundation of the building, that the Underpinner member of the Carpenters' Local Union shall work in conjunction and harmony with a member of the International Union of Laborers, and that all other recognized laborer's work shall be done in accordance with the established custom and practice on this class of work, but that under no condition shall a Laborer be permitted to use carpenter's tools.

" The pouring of concrete is the work of Laborers, members of the International Union. All other work of underpinning shall be performed in accordance with the established practice of similar work in the City of New York.

" It further appeared that five local unions affiliated with the International Union, namely Locals Nos. 45, 102, 250, 266 and 731, have entered into an agreement with the above-mentioned contractors.

" It was stated that Local 250 was organized as a Drill Runners' and Helpers' Union, and the representatives of the International Union express the desire that the contractors employ on drill run-

ning members of Union 250 and that said Union 250 be empowered to patrol the work insofar as it affected drill runners.

" It further appeared that Local 266 of such International Union was chartered as a Blasters' Union and the representative of such International Union express the desire that the work of a Blaster be done by members of Union 266 and that such Union 266 be entitled to patrol the work insofar as it affected Blasters.

" It was further considered that neither the drill runner nor the blasterer would be entitled to any of this work under compressed air and they made no such claim. It was further requested as the desire of the representatives of the International Union that the contractors employ as laborers in free air except shafts and tunnels the members of Local Union 731, with the understanding that any laborers of said International Union now employed as timbermen or laborer, if the timbermen's work should go to the timbermen of the Brotherhood of Carpenters, will be retained on the work as laborers and that all additional laborers required will be employed from Local 731, with the further understanding that all shaft and tunnel work in free air, except rock drilling and blasting and work performed by other trades in accordance with the established practice, shall be performed by members of Local 45 and 102.

" It was further stated that the members of the International Union are entitled in accordance with the provisions of its Constitution to transfer their cards from one Local Union to another.

" At the conclusion of the conference the contractors above-mentioned stated that they were ready to comply with the requests of the International Union and employ men under the terms and conditions above set forth, as to their classifications within the International Union and would exercise their rights under the provisions of the agreement as herein before quoted, to perform the work of underpinning and shoring with members of Local Union 1716 and 1456 of the Shorers and Dock Builders Union, and members of the International Union, in the manner hereinbefore specifically defined, and the work of timbering with members of Local 1536 of the Timberman's Union, all affiliated with the United Brotherhood of Carpenters. It was understood and agreed by all parties that all the understandings, arrangements and agreements heretofore set forth were made solely for the purpose of permitting this work to progress and without any party to the agreement relinquishing any of his rights or jurisdictional claims to be presented for determination within the confines of the Building Trades Department of the American Federation of Labor, and that no argument or presentation of fact would be presented

as to the work on this job, as a base for the determination of the dispute that would be presented for arbitration or appeal. All parties to the controversy understand that all rights which they have or claim to have are maintained by them for the purpose of presenting their side of any controversy in any arbitration or method of settlement of a jurisdictional dispute that may properly come on to be heard before any authorized body empowered to settle the dispute within the rules and regulations of the Building Trades Department of the American Federation of Labor, and the same shall not be used as a precedent in the presentation of any appeal, as above outlined.

" It was understood and agreed between each contractor and each and every union representative mentioned heretofore that the established rate of pay as of December 31, 1936, shall remain unchanged through the terms of the several contracts for which bids were submitted prior to that date, covering the construction of the Sixth Avenue subway system, and it was further understood that the men employed shall be members in good standing of the subordinate unions above-listed, chartered by their respective International Unions.

" The above agreement is entered into for the purpose of ending a strike and adjusting all difficulties and disputes at present existing on the Sixth Avenue Subway, and with the intent and hope of preventing all future strikes and it is agreed that the work will be resumed on Monday morning, March 1, 1937.

" In witness whereof the parties hereto have set their hands and seals this 25th day of February, 1937.

" Attested:

" THOMAS A. MURRAY     BLDING. & CONST. TRADES
COUNCIL

| | | |
|---|---|---|
| " (Signed) | (Signed) | (LS) |

| | |
|---|---|
| | (LS) |

" (Signed)

" CARPENTER LO. 1536-    CHARLES W. HANSON
        1456-1716

| | |
|---|---|
| (Signed) | (LS) |

" (Signed)

" HERBERT RIVERS VICE PRESIDENT HOD CARRIERS BUILDING & COMMON LABORS UNION LOCAL UNIONS NOS. 45-102-250-266-731

| | |
|---|---|
| | (LS) |

" (Signed)
" INT. UNION OF OPERAT-       JOSEPH J. DELANEY
   ING ENGINEERS
                               (Signed)

                                               (LS)

                                               (LS)

                                               (LS)

                                               (LS)

                                               (LS)

                                               (LS)

                                               (LS)

" (Signed)
" ARTHUR A. JOHNSON       by JAMES L. CAREY    (LS)
   CORP. & NICARO CO., INC.
                                (Signed)

" (Signed)
" GEORGE H. FLINN COR-       by S. M. RUTLEDGE, PRES.
   PORATION
                                 (Signed)                (LS)

" (Signed)
" THE CARLETON COM-       by ARTHUR J. CARLETON
   PANY, INC.
                                (Signed) . VICE PRES.   (LS)

                                                     (LS) "

Due to their being engaged in other matters of union importance, the International president and the president of the plaintiff Local Union No. 102, were unable to be present at this meeting at the board of transportation, but previous to such meeting the International president delegated Herbert Rivers, International vice-president, as his representative and as the representative of Local No. 102 to be present at that meeting.

Following the making of the agreement dated February 25, 1937, the plaintiff local unions made claim that to the exclusion of the members of the defendant local unions the members of the plaintiff unions were entitled to all the work as rock drillers,

blasters and laborers in shaft and tunnel work on the Sixth avenue subway job. Plaintiffs also claimed that the parties thereto entered into the agreement of February, 1937, in bad faith, and for the purpose of preventing the members of the plaintiff local unions from obtaining work upon the job as rock drillers and blasters. The claim of the plaintiff unions to exclusive right of employment as rock drillers, blasters and laborers on the shafts and tunnels in question is based upon what they claim is the history of their organization and the so-called jurisdiction given to their organizations by their International.

On this question of so-called jurisdiction of types of jobs there was a similar dispute in 1934, and at that time the work in question was awarded by the International to the plaintiff Local Union No. 102. Since the inception of the dispute which gave rise to the action herein, the International president has referred to such award of 1934 as one to be followed in the present dispute. However, the court is of the opinion that such action of the International president is without authority, and that the precedent of 1934 is not of value in the case at bar.

There has existed in New York a council of the local unions parties herein, and at a meeting in April, 1937, by a majority vote of eight to seven, the representatives in such district council held with the plaintiff unions on the question of the right to the jobs which are in dispute, but subsequent thereto exercising a privilege given them by the International constitution, the International officers " prorogued " the sessions of the district council. The local unions parties have endeavored to secure from the executive board of the International, which board has authority to pass upon the matters, a decision as to who has the right under the International laws to the jobs of rock drillers and blasters, but the court is satisfied from the proof herein that neither the executive board nor the International itself has taken any action as to the right to such work.

On the claim of conspiracy asserted by the plaintiffs the court is of the opinion that the agreement of February, 1937, was entered into in good faith by all the parties thereto for the sole purpose of preventing the existing strike from interfering with the progress of the Sixth avenue subway job. Under the agreement of February, 1936, the corporate defendants had the right and have the right to select from all of the local unions parties herein such employees as they desire, providing that such selection was made in good faith and providing the work was divided as much as possible among the different local unions who are parties herein. The court is satisfied by the proof herein that the corporate defendants

herein made what appeared to them to be a fair allocation of jobs by means of the agreement of February, 1937. If such corporate defendants have not done so, then the plaintiffs herein and the other unions who are parties herein have the right to call for and proceed to arbitration under the provisions of the agreement of February, 1936.

The International has consented to an arrangement by which members may transfer from one local union to the other, and if members of one local union are given employment in preference to the members of another local union, membership is apt to move from the local which is without employment to the local which can provide its members with work. From this it is seen that if the plaintiff unions lose what they claim to be their exclusive right to employment as rock drillers and blasters upon the Sixth avenue subway work, it may become the loser of its members. Such loss of membership comes from the union law and not from any other source, and it is interesting to note in connection with this that the agreement of February, 1936, makes no allocation of types of jobs to any of the local unions party thereto. The court is of the opinion that the question of who are to have the jobs is, as has been termed on the trial, a " family matter," and that this question should be disposed of by the International union or by its executive board and cannot be disposed of in this action.

The plaintiffs made claim on trial that the father of the local unions, to wit, the International, and its officers, had abandoned the family, but even if this is so, such abandonment is a matter for action first within the International to compel the parent to return from such abandonment, and, if such abandonment then continues, and if such return is not made, then to compel through the courts the International and its officers to act in this dispute. Until action is taken by the International or its executive board, in view of the fact that there was no allocation of types of work in the February, 1936, agreement, and in view further of the fact that the agreement of February, 1937, was made in good faith, and so long as such agreements of February, 1936, and February, 1937, are carried out in good faith, the court cannot say that the plaintiff unions have the right that they claim for their members for employment as rock drillers and blasters upon the Sixth avenue subway work.

Based on the foregoing and from all the proof before it, the court holds that the plaintiffs have not made out a case and that the defendants are entitled to a dismissal of the complaint herein.